## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**TONYA BELL,**

      **Petitioner,**

**v.**                                                    **Case No. 4:19cv442-WS/MAF**

**WARDEN, FCI TALLAHASSEE,**

      **Respondent.**

_____/

## ORDER and
## REPORT AND RECOMMENDATION

On or about September 5, 2019, Petitioner Tonya Bell, a federal inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. She subsequently filed an amended § 2241 petition. ECF No. 9. On December 16, 2019, Respondent filed an answer, with exhibits. ECF No. 12. Petitioner then filed a motion for leave to supplement the first ground of her amended petition, ECF No. 13, which this Court granted and then allowed Respondent time to file an amended response, ECF No. 14. Respondent filed an amendment to the answer on February 3, 2020. ECF No. 15. Petitioner sought an extension of time to submit her reply, ECF No. 16, which this Court granted, ECF No. 17.

Thereafter, Petitioner filed various additional motions. In particular, Bell requested this Court to "seal the documents, and exhibits in this

proceeding to protect both parties, from unnecessary bias and perjury." ECF No. 18.   In an abundance of caution, the Court construed this as a request to seal all filings in this case and granted the request pending the Government's response and any reply by Bell.   ECF No. 23.

Bell also requested responses to seven "admissions," ECF No. 19, and appeared to make a discovery request, ECF No. 20.   In addition, she requested production of "any electronical or televideo data into written format," specifically "the DHO hearing held by Mr. Henderson . . . on either the 4th or 19th of April, 2018"; Bell's "medical and Psychiatric and Psychological records from a. Jan. 25, 2018; b. Jan. 25-28, 2019; c. March 19-20, 2018"; and "[a]ny policy related to maintaining, storing, and/or retrieving, erasing, or back-up hardware procedure related to the DHO hearings"; and "all appeal responses related to ground one."   ECF No. 21. The Court gave the Government the opportunity to respond to these motions and permitted Petitioner time to file a reply to that response.   ECF No. 23.

The Government filed a response to Petitioner's motions, ECF No. 24, and Petitioner filed a reply thereto, ECF No. 25, as well as two amendments to her reply, ECF Nos. 28 and 29.   Petitioner also filed a reply to the Government's answer.   ECF No. 26.   On or about May 12, 2020, Petitioner

submitted a letter to the Court requesting "a file copy of the attached motion & attachment and an updated docket sheet."   ECF No. 30.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).   After careful consideration, the undersigned concludes Petitioner is not entitled to federal habeas relief and, accordingly, this amended § 2241 petition should be denied.   An order addressing the pending motions is also set forth below.

## Background and Procedural History

Petitioner Tonya Bell, an inmate at the Federal Correctional Institution (FCI) in Tallahassee, Florida, is serving a sentence of 300 months, to be followed by five (5) years of supervised relief, imposed January 8, 2008, by the Superior Court of the District of Columbia in case number 2007 CF3 12804, following her entry of a guilty plea to fifteen (15) counts.   ECF No. 12-17.   Her current release date is December 18, 2029.   *See* www.bop.gov/inmateloc.

Bell filed this § 2241 petition challenging nine prison disciplinary actions that resulted in the loss of Good Conduct Time (GCT) credits.   ECF No. 9 (amended petition); *see* ECF No. 1.   In her amended petition, she presents six grounds:   (1) incident reports 3240650, 3190389, and 3102789

should be expunged because of incorrect information relied on by the discipline hearing officer (DHO); (2) incident reports 2954936, 2955644, and 2963400 "should be dismissed for not staff (psychologist) not receiving a mental health evaluation (MHE) within 24 hours"; (3) incident report 3082243 should be dismissed as procedural error occurred when Bell was referred for a mental health evaluation (MHE); (4) incident report 3063410 should be expunged as procedural error occurred because Bell did not receive a MHE within 24 hours of the report; (5) incident report 3102789 should be dismissed as "[t]wo incident reports were written five minutes apart"; (6) and incident report 3090183 should be dismissed because of insufficient evidence.   ECF No. 9 at 3-5.

Respondent has filed an answer, with exhibits.   ECF No. 12. Respondent indicates Bell has exhausted her administrative remedies.   *Id.* at 3.   Respondent asserts the disciplinary sanctions at issue were imposed pursuant to authorized Bureau of Prisons (BOP) regulations and policies, and Bell received due process throughout the disciplinary process.   *Id.* at 3-4.   Respondent details each incident report, *id.* at 5-15, and argues the facts show Bell received advance written notice of the charges, an opportunity to call witnesses and present evidence, a written statement made by the factfinder outlining the evidence relied on and the reasons for the disciplinary

action, and the discipline was supported by at least some evidence, *id.* at 15. Respondent further argues Bell's arguments in each ground lack merit.  *Id.* at 15-23; ECF No. 15 at 1-2.

In her reply, Bell requests her petition be granted.   ECF No. 26 at 1. She asserts that she "is not guilty, just because she says she is guilty, due to her lack of knowledge and her mental state."  *Id.* at 2.

## <u>Analysis</u>

The Judiciary Act of 1789 granted federal courts the power to issue the writ of habeas corpus.   *See* <u>United States v. Hayman</u>, 342 U.S. 205 (1952). The habeas remedy is now codified in 28 U.S.C. § 2241, subsection (c)(3) of which provides that the writ of habeas corpus shall not extend to a prisoner unless the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."   As noted in <u>Hayman</u>, prisoners must bring habeas corpus applications in the district of confinement.   342 U.S. at 213. Because courts with federal prisons in their jurisdictional boundaries became inundated with habeas petitions, and because the materials, witnesses, and other evidence which had a significant bearing on the determination of the legality of a sentence were generally located in the district where sentence was imposed rather than where the prisoner was confined, in 1948 Congress enacted § 2255 of Title 28.   *See id.* at 212-14, 218; *see also* <u>Wofford v.</u>

Scott, 177 F.3d 1236, 1239 (11th Cir. 1999).

The language of § 2255 suggests, and the Eleventh Circuit has expressly concluded, that this statute channels challenges to the legality of the imposition of a sentence, while leaving § 2241 available to challenge the continuation or execution of an initially valid confinement.   *See* Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1351–52 (11th Cir. 2008); United States v. Jordan, 915 F.2d 622, 629 (11th Cir. 1990) (explaining § 2255 is primary method of collateral attack on federally imposed sentence).   Thus, § 2241 provides an avenue for challenges to matters such as the administration of sentences or parole, prison disciplinary actions, prison transfers, and certain types of detention.   *See* Antonelli, 542 F.3d at 1352 (petition challenging decision of Federal Parole Commission is properly brought pursuant to § 2241); Thomas v. Crosby, 371 F.3d 782, 810 (11th Cir. 2004) (petition challenging pre-trial detention is properly brought pursuant to § 2241); Bishop v. Reno, 210 F.3d 1295, 1304 n.14 (11th Cir. 2000) (petition challenging BOP's administration of service credits, including calculation, awarding, and withholding, involves execution rather than imposition of sentence, and thus is matter for habeas corpus).

In this case, Bell's § 2241 petition raises challenges to nine (9) BOP incident reports that resulted in determinations that she committed the

prohibited acts as charged, specifically five incidents of assault, two incidents of fighting, one incident of threatening another with bodily harm, and one incident of insolence towards staff.   ECF No. 9 at 3-6; ECF Nos. 12-1, 12-2, 12-3, 12-7, 12-9, 12-10, 12-11, 12-13, and 12-16.   The imposed sanctions included the loss of GCT credits.   *See* ECF Nos. 12-1 at 3, 12-2 at 2, 12-3 at 2, 12-7 at 2, 12-9 at 2, 12-10 at 2, 12-11 at 2, 12-13 at 2, and 12-16 at 2. Both Bell and Respondent indicate Bell has exhausted her administrative remedies.   ECF No. 9 at 3-6; ECF No. 12 at 3.

A federal inmate has a liberty interest in earned GCT credits and, accordingly, must receive due process before those credits are revoked as a result of prison discipline.   *See* Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974).   The Eleventh Circuit has explained:

> To state a cognizable claim for the denial of due process in connection with prison discipline, a prisoner must show a protected liberty interest of which he was deprived without minimum procedural protections.   Wolff, 418 U.S. at 557-58 . . . .   As the district court correctly recognized, [this § 2241 federal inmate petitioner] has a protected liberty interest in the statutory Good-Time credits that he has earned.   *Id.*

> In Wolff, the Supreme Court held that minimum due process protections in the context of a prison disciplinary hearing include the following:   (1) advance written notice of the charges against the inmate (in this case, the Incident Report); (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written

> statement by the factfinder outlining the evidence relied on and
> the reasons for the disciplinary action (here, the DHO report).
> *Id.* at 563-67 . . . ; O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th
> Cir. 2011).

Dean-Mitchell, 837 F.3d at 1112.   As reflected in the attachments to

Respondent's answer, Bell received the required procedural due process

protections.   *See* ECF Nos. 12-1 – 12-16.   In particular, the incident reports

and DHO findings indicate Bell was advised of her rights and understood

those rights, including receiving a written copy of the incident report/charges,

the right to have a staff representative, the right to call witnesses and present

documentary evidence, the right to present a statement or remain silent, the

written copy of the DHO's findings and evidence relied on to support the

DHO's decision, and the right to appeal the DHO's decision pursuant to the

Administrative Remedy Procedure within 20 calendar days.   ECF Nos. 12-

1, 12-2, 12-3, 12-7, 12-9, 12-10, 12-11, 12-13, and 12-16.

In addition, the U.S. Supreme Court has held that "revocation of good

time does not comport with the 'minimum requirements of procedural due

process' unless the findings of the prison disciplinary board are supported

by some evidence in the record."   Superintendent, Mass. Corr. Inst. v. Hill,

472 U.S. 445, 455-56 (1985).   In particular, the Court explained:

> Ascertaining whether this standard is satisfied does not require
> examination of the entire record, independent assessment of the

> credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455; *see, e.g.*, <u>Young v. Jones</u>, 37 F.3d 1457, 1460 (11th Cir. 1994) (explaining that federal courts should not be "judging and reweighing the evidence presented in a prison disciplinary hearing"; rather, the "role of this court is to determine whether an inmate receives the procedural protections provided by <u>Wolff</u> and whether 'some evidence' exists which supports the hearing officer's determination").   Accordingly, each incident report, and the associated ground(s) at issue, is addressed below.

### <u>Ground 1</u>:   Incident Reports 3240650, 3190389, and 3102789

In Ground 1, Bell asserts three incident reports – 3240650, 3190389, and 3102789 – should be expunged and her GCT restored because the DHO forfeited her GCT "imposed to meet a PLRA sentence which expired in 2003."  ECF No. 9 at 3.   As Respondent explains, however, the GCT Bell lost was actually taken from her D.C. Sentencing Reform Amendment Act (DC-SRAA) sentence as reflected in BOP sentence computation #020. ECF No. 12 at 16; ECF No. 15 at 2; *see* ECF Nos. 12-4, 12-5, 12-17.   This ground should be denied.

**<u>Ground 2</u>:    Incident Reports 2954936, 2955644, and 2963400**

In Ground 2, Bell asserts three incident reports – 2954936, 2955644, and 2963400 – should be dismissed because she, as a mental health care level 3 inmate, did not receive a mental health evaluation (MHE) within 24 hours of being placed in the special housing unit (SHU).   ECF No. 9 at 3. Respondent asserts this claim lacks merit.   ECF No. 12 at 17.

As Respondent indicates, the BOP recognizes, in Program Statement 5310.16, titled "Treatment and Care of Inmates with Mental Illness," that "[a]n inmate's mental health symptoms may contribute to institution rule infractions that could result in disciplinary sanctions, including SHU placement or the extension of SHU placement."   BOP Program Statement 5310.16, at 21.   Accordingly, the Program Statement provides that "[i]n these cases it is the responsibility of the Mental Health Treatment Coordinator to provide consultation to the DHO to ensure the disciplinary process is applied appropriately to inmates with mental illness."   *Id.*   In particular, any incident report received by a CARE3-MH inmate, as Bell was for the incidents at issue, is referred by the DHO to a psychologist for determination of competence and responsibility.   *Id.* at 22.   The Program Statement further provides:

> The Mental Health Treatment Coordinator indicates whether the inmate is competent or responsible and whether some types of sanctions are inappropriate based on his/her mental health needs.  Sanctions that limit social support (e.g., SHU placement, loss of visits, or loss of phone calls) should be considered on a case-by-case basis and may not be appropriate for inmates with mental illness who use these supports as a component of their treatment or recovery.

*Id.*  Contrary to Bell's allegation, nothing indicates such evaluation of competence and responsibility must be completed within 24 hours of an inmate's SHU placement.   *See id.*; ECF No. 12 at 17.

The incidents at issue occurred February 4, 2017; February 25, 2017; and March 17, 2017; all involved assault.   *See* ECF Nos. 12-7, 12-9, 12-10. As Respondent indicates, during the disciplinary process for these incident reports, staff identified Bell as a CARE3-MH inmate and a staff psychologist conducted an MHE regarding these incident reports on March 28, 2017, in accordance with Program Statement 5310.16.   *See* ECF No. 12-8.   The resulting BOP Psychological Services Institution Disciplinary Process Report indicates that Bell's diagnostic history did not appear to affect her responsibility for the incidents or her competency to undergo the disciplinary process.   ECF No. 12-8 at 2.   The report also indicated evidence suggested Bell had a clear understanding of right from wrong and of the DHO process.   *Id.*   Accordingly, the evaluator indicated that sanctions would be

left to the DHO's discretion.    *Id.*

Thereafter, Bell continued through the disciplinary process and, in each case, the DHO determined she committed the assault as charged. ECF Nos. 12-7 at 2, 12-9 at 2, 12-10 at 2.   Thus, as Respondent asserts, the BOP's Program Statement was complied with and Bell's argument lacks merit.   This ground should be denied.

### Ground 3:   Incident Report 3082243

In Ground 3, Bell asserts incident report 3082243 should be dismissed because the "detailed written facts dated 1/25/18" indicates she had psychotic and abnormal mental health symptoms but she was not referred to psychology for a mental health evaluation (MHE).   ECF No. 9 at 4. Respondent indicates this claim lacks merit.   ECF No. 12 at 19.

Incident Report 3082243 charges Bell with "[t]hreatening another with bodily harm" in violation of Prohibited Act Code 203.   ECF No. 12-11 at 3. On the report, which includes an indicated date of January 25, 2018, and time of 9:45 p.m., the Description of the Incident section provides:

> At the above date and time, I stepped over to Unit 2 South due to there being a disruption on the unit.   Upon getting to the unit, I observed Inmate Bell (02260-001) throwing things in the trash, cursing as well as muttering incoherently.   Once compound arrived on the unit they instructed Inmate Bell to put her items down and to come with them, as inmate Bell stepped out of her room she made eye contact with me and proceeded to pick up

and [sic] mop stick that was on the floor, holding it in a
threatening matter.   Inmate Bell took a step in my direction and
twirled the mop stick, at that moment Officer Garcia stepped in
front of Inmate Bell and removed the mop stick from her hand.

*Id*. at 3.   The reporting employee was R. Wofford and the date and time for

the report was January 25, 2018, at 10:30 p.m., which evidently corresponds

to Bell's reference to "detailed written facts dated 1/25/18."   *Id*.   The section

titled "Comments of Inmate to Committee Regarding Above Incident"

contains the handwritten sentence, "I didn't mean too [sic]."   *Id*.

The DHO Report quoted Bell's statement, "I'M GUILTY, THE REPORT

IS TRUE."   *Id*. at 1.   The DHO found Bell committed the prohibited act of

threatening another with bodily harm, contrary to Code 203, based on Bell's

statement and the written incident report.   *Id*. at 2.

Respondent explains that on the incident date, January 25, 2018, and

on the hearing date, March 1, 2018, Bell was a Mental Health Care Level 2.

ECF No. 12 at 19.   Respondent further explains that, pursuant to Program

Statement 5310.16, at 22, no MHE was required absent an appearance of

mental health concerns.   ECF No. 12 at 19; *see* BOP Program Statement

5310.16, at 22.   Indeed, that Program Statement provides:

The DHO refers the following incident reports to a psychologist
for determination of competence and responsibility:

▪ Any incident report received by a CARE3-MH or CARE4-MH

inmate.

▪    Any incident report received by a CARE2-MH inmate where there appears to be a mental health concern.

▪    Any incident reports for Code 228 involving self-harm.

▪    Any incident report for Code 302, Misuse of Authorized Medication.

*Id.*   Thus, as Bell was a CARE2-MH inmate in early 2018, the DHO would only refer the incident report to a psychologist for a determination of competence and responsibility if there appeared to be a mental health concern.   Nothing in the "facts" section referenced by Bell, quoted above, or in the remainder of the report, necessarily indicates such concern.

Moreover, Respondent points out that, even assuming staff should have performed an MHE pursuant to Program Statement 5310.16, a violation of policy alone does not constitute a constitutional violation.   ECF No. 12 at 19.   Indeed, "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law," rather "[p]rogram statements are 'internal agency guidelines [that] may be altered by the [BOP] at will' and that are not 'subject to the rigors of the Administrative Procedure Act, including public notice and comment.'"   <u>Reeb v. Thomas</u>, 636 F.3d 1224, 1227 (9th Cir. 2011) (affirming denial of § 2241

petition challenging BOP decision to expel Reeb from residential drug abuse program; quoting Jacks v. Crabtree, 114 F.3d 983, 985 n.1 (9th Cir. 1997)); Sepulveda v. Warden, Canaan USP, 645 F. App'x 115, 118 n.2 (3d Cir. 2016) (affirming denial of § 2241 petition challenging prison discipline and noting, with citation to Reeb:  "A habeas claim under § 2241 cannot be sustained based solely on the BOP's alleged violation of its own Program Statements inasmuch as Program Statements are not mandated by statute or the Constitution, and there has been no showing of prejudice."); Nelson v. Ives, No. ED CV 15-2488-CAS (PLA), 2016 WL 3563290, at *3 (C.D. Cal. May, 23, 2016) (Report and Recommendation to deny § 2241 petition challenging prison discipline and explaining:  "[W]hile petitioner's first hearing may have been deficient under BOP policy because of the absence in the record of a mental health assessment, this error was corrected for the second hearing.  Petitioner has not demonstrated that he has suffered any prejudice.  In any event, a violation of BOP policy as set out in a program statement does not rise to the level of a due process violation, as 'noncompliance with a BOP program statement is not a violation of federal law.'" (quoting Reeb, 636 F.3d at 1227)); *accord, e.g.*, Le v. Augustine, No. 5:12cv377-LAC/EMT, 2013 WL 2250142, at *7 (N.D. Fla. May 22, 2013) (Order adopting Report and Recommendation to deny § 2241 petition

challenging prison discipline, which explained, in pertinent part: "[T]o the extent Petitioner argues that the alleged violations of BOP Program Statements and federal regulations by the investigating officer, hearing officer, and officials reviewing his administrative appeals provide a basis for habeas relief independent of his due process claims, his claim is without merit.    A claim that the BOP violated its own Program Statements, when the Program Statements were not mandated by statute or the constitution, does not constitute a violation of federal law; therefore, it cannot be sustained in a habeas petition.    Program Statements are BOP policies, guidelines or interpretive rules, not substantive law." (citing <u>Reeb</u>, 636 F.3d at 1227)).

As explained above, Bell received all required due process protections during the disciplinary proceedings and evidence in the record supports the DHO's determination.    Accordingly, this ground should be denied.

## <u>Ground 4</u>:    Incident Report 3063410

In Ground 4, Bell asserts incident report 3063410 should be expunged because she, as a CARE2-MH or CARE3-MH inmate did not receive an MHE to determine competence or responsibility, within 24 hours of her arrival to the SHU.    ECF No. 9 at 4.    Respondent asserts Bell is not entitled to relief on this ground.    ECF No. 12 at 20-21.

The Incident Report describes this incident, which occurred December

4, 2017:

> An investigation concluded regarding the alleged assault on inmate [ ] by inmate Tonya Bell, Reg. No. 02260-007. It was determined Bell did not assault [ ]; rather, inmates Bell and [ ] were involved in a fight. This determination was based on Bell and [ ] statements, inmate witness statements, and photographs of the area where the incident occurred. Specifically, on December 4, 2017, at approximately 4:26 PM, staff identified Inmates Tonya Bell and [ ] as being involved in an altercation on Unit M-2. Inmate Bell was observed, by the unit Officer, on the floor striking with a closed fist inmate [] in the face and head area. Both inmates, Bell and [ ], admitted to arguing before the incident occurred, however, [ ] denied striking Bell. Inmate Witnesses stated they witnessed [ ] strike Bell first by punching her in the head. Bell responded by punching [ ] repeatedly in the face until staff arrived and separated them. Pictures of the common area where the incident occurred documented trash from the trash can scattered everywhere on the floor. It is evident a struggle occurred between Bell and [ ].

ECF No. 12-13 at 3. The date of the description is December 19, 2017, the date the incident report was delivered. *Id.* The report indicates Bell had no comment or statement. *Id.* at 3-4.

As Respondent explains, on the date of this incident, Bell was a CARE3-MH inmate. *See* ECF Nos. 12-6, 12-13. Notably, however, in a BOP Psychology Services Diagnostic and Care Level Formulation conducted on December 15, 2017, a staff psychologist concluded that, based on Bell's symptoms and functioning, she should be at a CARE2-MH assignment. ECF No. 12-6 at 3. Accordingly, Bell's mental health care

level assignment was changed from CARE3-MH to CARE2-MH.   *Id.*

Thus, by the time of Bell's disciplinary hearing on January 9, 2018, she was a CARE2-MH inmate.   *See* ECF Nos. 12-12, 12-13.   As explained in the analysis of Ground 3, *supra*, pursuant to Program Statement 5310.16, at 22, no MHE was required absent an appearance of mental health concerns. ECF No. 12 at 21; *see* BOP Program Statement 5310.16 at 22.   Nothing in the incident report or in the BOP Psychology Services Diagnostic and Care Level Formulation conducted on December 15, 2017, indicates mental health concerns about Bell's competence or responsibility.   See ECF Nos. 12-6, 12-13 at 3-4.

Further, as Respondent again points out, even assuming staff should have performed an MHE pursuant to Program Statement 5310.16, a violation of policy alone does not constitute a constitutional violation.   ECF No. 12 at 21.   "A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." Reeb, 636 F.3d at 1227; *see* Sepulveda, 645 F. App'x at 118 n.2; Nelson, No. ED CV 15-2488-CAS (PLA), 2016 WL 3563290, at *3; *accord, e.g.*, Le, No. 5:12cv377-LAC/EMT, 2013 WL 2250142, at *7.

As explained above, Bell received all required due process protections

during the disciplinary proceedings and evidence in the record supports the DHO's determination.    This ground should be denied.

## <u>Ground 5</u>:    Incident Report 3102789

In Ground 5, Bell asserts incident report 3102789 should be dismissed as "[t]wo incident reports were written five minutes apart" and "DHO verified Ms. Bell mental state caused for dismissal of the sexual proposal infraction via psychology, but refuse to dismiss the assault infractions with the same verifiable evidence."    ECF No. 9 at 5.    Thus, according to Bell, she received two incident reports within a five-minute period, one charging assault and one charging a "sexual proposal infraction"; she asserts the DHO dismissed the "sexual proposal infraction" due to her "mental state," but the assault charge was not dismissed.    Bell evidently contends the assault charge should have also been dismissed due to her mental state.

The assault incident occurred March 21, 2018, and the incident report has the same date and indicates a copy thereof was provided to Bell that day at 1620 (4:20 p.m.).    ECF No. 12-3.    The report describes the incident:

> On 3/21/18 at approximately 2:30 pm, this writer was speaking with inmate Bell in the hallway between psychology services and the 2nd floor clinic.    This writer called for the assistance of the compound officer as she appeared agitated, was walking away from psychology services, and was not listening to staff directives.    She later became calm, but immediately upon the compound officer arriving on the scene, she struck me with her

left open hand on the side of my face, close to my right eye, and began to run off.   Staff immediately gained control of inmate Bell and restrained her.   Operations was notified.

*Id.* at 5.   The reporting employee was L. Currie.   *Id.*   The DHO report summarizes Bell's statement:   "I'M GUILTY.   I AM DISAPPOINTED AT MYSELF FOR WHAT HAPPENED.   I REALLY DON'T REMEMBER."   ECF No. 12-3 at 1.   The DHO found Bell committed the assault as charged.   *Id.* at 2.   The section for specific evidence relied on includes the following paragraph:

> THE DHO CONSIDERED YOUR ADMISSION.   YOU DID NOT PRESENT, NOR DID THE DHO FIND, ANY EVIDENCE TO DISPUTE THE REPORTING OFFICER'S WRITTEN ACCOUNT OR YOUR COMMENT AS IT RELATES TO THIS INCIDENT. THE BUREAU OF PRISONS DEFINITION OF ASSAULT IS AN ATTEMPT OR THREAT TO DO VIOLENCE TO ANOTHER, AND INCLUDES BATTERY OR THE UNCONSENTED TOUCHING OF ANOTHER.   THE DHO GIVES THE GREATER WEIGHT OF EVIDENCE TO THE VIDEO SURVEILLANCE, REPORTING STAFF MEMBER AND YOUR STATEMENT. THE DHO FINDS THAT YOU COMMITTED THE PROHIBITED ACT OF ASSAULT, CODE 224, AND SANCTIONED YOU ACCORDINGLY.

*Id.* at 2.

Bell does not provide a number for the second incident report she asserts was issued within five minutes of the first report, for the "sexual proposal infraction," but later dismissed because of her "mental state."   ECF No. 9 at 5.   Nothing in the documentation provided by Respondent reflects

the existence of such second report.    *See* ECF Nos. 12-1 – 12-17.    In her

reply, Bell says she does not know the report number because it was

dismissed.    ECF No. 26 at 12.    She also indicates "the assault occurred

within 15 minutes" – not within five minutes as she asserted in her petition –

"of the comment that was dismissed."    *Id.* at 13; *cf.* ECF No. 9 at 5.

Even if such second report did exist and charged a "sexual proposal

infraction," as described by Bell, it may have been dismissed with the DHO

proceeding only on the assault charge, similar to what occurred with incident

report 3090183, discussed in the analysis of Ground 6, *infra*.    Regardless,

as Respondent indicates, even if BOP policy was not followed, such does

not rise to the level of a constitutional violation.    *See* ECF No. 12 at 22.

With regard to the incident report at issue in this ground, Incident

Report 3102789, as explained above, Bell received all required due process

protections during the disciplinary proceedings, and evidence in the record

supports the DHO's determination.    This ground should be denied.

## **Ground 6: Incident Report 3090183**

In Ground 6, Bell asserts incident report 3090183 should be dismissed

because her comment of "I love you" to the reporting officer was not sufficient

evidence to support the DHO's finding of insolence.    ECF No. 9 at 5.

Respondent asserts this claim lacks merit, explaining that Bell received due

process and Bell admitted guilt.    ECF No. 12 at 23.

The incident report indicates this incident occurred February 16, 2018.

ECF No. 12-16 at 3.    The description of the incident, in section 11 of the

report, provides:

> On February 16, at approximately 6:08pm, while conducting rounds, Inmate Bell, Tonya made the comment "that she loved me," as I passed her cell.    I immediately told Inmate Bell that she can not make comments like that, she responded "that she could if she wanted to."

*Id.*    The reporting employee is S. McGowan.    *Id.*    In section 17, for

Comments of Inmate to Committee Regarding Above Incident, the report

indicates, "I'm guilty."    *Id.*    In section 24, for Inmate Statement and Attitude,

the report provides:

> Inmate Bell, Tonya #02260-007 was properly identified by her 3x5 picture card and advised of her rights, and acknowledged that she understood her rights.    Inmate Bell, Tonya #02260-007 was given a copy of the incident report and the report [w]as read to inmate Bell, Tonya #02260-007.    When asked if the incident report was true as written, she stated, "Yes" Inmate Bell, Tonya #02260-007 was asked if she wanted to make a statement and she stated, "No."

*Id.* at 4.

Similarly, the DHO Report indicates, in the Summary of Inmate

Statement:    "I'M GUILTY, THE REPORT IS TRUE."    *Id.* at 1.    The DHO

found the act of insolence towards staff was committed in violation of Code

312, and provided the following specific evidence relied on to support the

findings:

> YOUR DUE PROCESS RIGHTS WERE REVIEWED WITH YOU BY THE DHO AT THE TIME OF THE HEARING. YOU STATED YOU UNDERSTOOD YOUR RIGHTS AND HAD NO DOCUMENTARY EVIDENCE TO PRESENT. YOU DID NOT REQUEST ANY WITNESSES NOR DID YOU REQUEST THE SERVICES OF A STAFF REPRESENTATIVE TO ASSIST YOU AT THE HEARING. YOU INDICATED TO THE DHO THAT YOU[] UNDERSTOOD AND YOU WERE READY TO PROCEED WITH THE HEARING.

> THE DHO FOUND YOU COMMITTED THE PROHIBITED ACT OF CODE 312, INSOLENCE TOWARDS STAFF. THE CHARGE 206, MAKING A SEXUAL PROPOSAL WAS DISMISSED AS INSOLENCE WAS MORE APPROPRIATE.

> THE DHO BASES THIS DECISION ON THE FACTS PRESENTED IN THE BODY OF THE WRITTEN REPORT AS FOLLOWS: ON FEBRUARY 16, 2018, AT APPROXIMATELY 6:08PM, WHILE CONDUCTING ROUNDS, INMATE BELL, TONYA MADE, 02260-007, THE COMMENT "THAT SHE LOVED ME", AS I PASSED HER CELL. I IMMEDIATELY TOLD INMATE BELL THAT SHE CANNOT MAKE COMMENTS LIKE THAT, SHE RESPONDED, "THAT SHE COULD IF SHE WANTED TO."

> YOU ADMITTED TO THE CHARGES AT THE DHO HEARING AND STATED, "I'M GUILTY, THE REPORT IS TRUE."

> IN REGARD TO THIS INCIDENT, THE DHO CONSIDERED YOUR ADMITTANCE TO THE CHARGE AND SECTION 11 OF THE INCIDENT REPORT. THE REPORTING STAFF MEMBER WAS CLEAR AS THEY DETAILED YOUR COMMENT IN SECTION 11 OF THE INCIDENT REPORT. THE DHO FOUND THE REPORTING STAFF MEMBER STATEMENT AND YOUR ADMISSION VALID AND

> WARRANTED AN INCIDENT REPORT FOR INSOLENCE.
> ALTHOUGH THE DHO DOES NOT SUPPORT CODE 206 AS
> WRITTEN, THE DHO FINDS THAT YOU COMMITTED THE
> PROHIBITED ACT OF CODE 312, INSOLENCE TOWARDS
> STAFF AND SANCTIONED YOU ACCORDINGLY.

*Id.* at 2.

The description of the incident as well as Bell's admission support the DHO's determination. *See id.* at 3. Bell asserts saying "I love you" does not constitute sufficient evidence of insolence. The record reflects a bit more than that occurred, however. Specifically, after Bell made that statement to the prison employee, the employee told Bell she could not make such statements and Bell then said "she could if she wanted to." ECF No. 12-16 at 2, 3. Thus, "some evidence" in the record supports the DHO's conclusions. *See, e.g.*, Smith v. Roal, 494 F. App'x 663, 664-65 (7th Cir. 2012) (affirming dismissal of § 2241 petition challenging discipline for assaulting guard and explaining: "Smith's own statements supply some evidence that he disobeyed and assaulted the guard [as] [h]e admits that he spun around and 'removed' the hand gripping his shoulder – a hand belonging to the guard who had just told Smith he was about to be handcuffed."); Jones v. Ortiz, Civ. Action No. 17-2639 (JBS), 2019 WL 397976, at *5 (D. N.J. Jan. 31, 2019) (district court opinion affirming imposition of discipline for insolence and explaining as to that charge: "The

Court easily finds that there is at least 'some evidence' to support the insolence charge based on the testimony of Officer Sheets and inmates Lovelady and Colon who testified that Petitioner raised his voice to Officer Sheets and argued with Officer Sheets."). *See also, e.g.*, Lerma v. Fed. BOP, No. Civ. A. 1:01cv232-C, 2003 WL 22121092, at *2-6 (N.D. Tex. Sept. 12, 2003) (district court order denying § 2241 challenge to prison discipline for insolence toward staff member where inmate raised his voice, became argumentative, and demanded explanation for change in rules, and explaining, among other things, "BOP Prohibited Act Code 312 provides that a federal petitioner may not act with 'insolence towards a staff member,' and the violation of Code 312 is punishable as a moderate category offense;" Code 312 is not unconstitutionally vague or overbroad; the term "insolence" is "readily understood to prohibit disrespectful, abusive, or offensive behavior, and the prohibition against insolence bears a direct relation to the prison administration's need to maintain decorum between inmates and prison officials"); Cardenas v. Adler, No. 1:09cv01793 LJO MJS HC, 2011 WL 2785099, at *5-7 (E.D. Cal. July 13, 2011) (report and recommendation to dismiss § 2241 petition challenging discipline for insolence toward staff member, accepting correctional officer's version of facts, and finding Code 312 valid, explaining "[t]he impact of allowing inmates to act in a disrespectful

manner towards correctional officers creates potential safety concerns if prisoners do not view officers as being in positions of authority over the inmate population" and "[a] prisoner has no right to address prison officials in a disrespectful or abusive manner").   This ground should be denied.

## <u>Order on Pending Motions</u>

As referenced above, Petitioner Bell has filed various additional motions.   These motions are addressed below and disposed of by order.

## Motion to Seal

Bell requests this Court to "seal the documents, and exhibits in this proceeding to protect both parties, from unnecessary bias and perjury." ECF No. 18.   The Court construed this as a request to seal the documents filed in this case and granted the request pending the Government's response and any reply by Bell to that response.   ECF No. 23.

The Government has filed a response and, therein, points out that Bell offers no proffer or suggestion regarding how public access to the documents and exhibits in this case would lead to "unnecessary bias and perjury."   ECF No. 24 at 1.   Further, Bell has not shown that sealing the documents, thereby denying access, is necessitated by a compelling government interest.   *Id.*   The Government concludes the motion to seal should be denied.   *Id.* at 3.

Bell has filed a reply.   ECF No. 25.   She requests the Court enter "an order to seal records and or documents that pertain to [her] confidential mental health records."   *Id.* at 1.   In support of her request, she cites to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).   *Id.* at 2.   She particularly identifies two documents filed by Respondent in its exhibits, ECF Nos. 12-6 and 12-8.   ECF No. 25 at 3-5.

Both documents identified by Bell are mental health reports prepared by BOP psychological services.   *See* ECF Nos. 12-6 and 12-8.   Documents that contain personal mental health information are widely recognized as sensitive and are afforded privacy under the federal HIPAA privacy rule. Indeed, both documents at issue are labeled "SENSITIVE BUT UNCLASSIFIED."   ECF Nos. 12-6 and 12-8.   Accordingly, the Court grants in part Bell's motion to seal, directs that these two exhibits be sealed, ECF Nos. 12-6 and 12-8, and denies the motion to seal as to the remaining exhibits and documents filed in this case.

## Discovery Motions

Bell also requested responses to seven "admissions," ECF No. 19, and appeared to make a discovery request, ECF No. 20.   In addition, she requested production of "any electronic or televideo data into written format," specifically "the DHO hearing held by Mr. Henderson . . . on either

the 4th or 19th of April, 2018"; Bell's "medical and Psychiatric and Psychological records from a. Jan. 25, 2018; b. Jan. 25-28, 2019; c. March 19-20, 2018"; and "[a]ny policy related to maintaining, storing, and/or retrieving, erasing, or back-up hardware procedure related to the DHO hearings"; and "all appeal responses related to ground one."   ECF No. 21.

The Government filed a response to Petitioner's motions, ECF No. 24, asserting Bell has not established "good cause" for these requests "by pointing to '*specific allegations*' before the court which show reason to believe that she may, if the facts are fully developed, be able to *demonstrate that she is being confined illegally*' and is entitled to relief."   *Id.* at 24 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969) (emphasis added)).   The Government states that Bell's requests "are a plain-vanilla fishing expedition to which Rule 6 does not entitle her."   *Id.*

Petitioner filed a reply thereto, ECF No. 25, and amendments to her reply, ECF Nos. 28 and 29.   In her reply, she maintains that as a pro se litigant, she is held to less stringent standards.   ECF No. 25 at 7.   She indicates that her requests for discovery, in ECF Nos. 19, 20, and 21, still stand, "especially [her] request [for] the electronic televideo format in written format" because it pertains to Ground 5 of her amended petition. ECF No. 25 at 8.   She asserts "[t]hese facts are not speculative[,] they

actually occurred." *Id.* She asks this Court "to grant discovery relief, except for, strike Admission 6 and 7, because it is speculative." *Id.* at 9.

In the first addendum to her reply, Bell asserts her discovery request is minimal and she "needs the records in order to adequately prepare her 2241." ECF No. 28 at 1-2. In the second addendum to her reply, Bell acknowledges a habeas petition is generally not entitled to discovery but evidence may be obtained upon a showing of "good cause." ECF No. 29 at 2. She asserts that, in this case, the requested "discovery pertain[s] to [the] majority of Ground Five" of her petition, in which she asserted incident report 3102789 should be dismissed because it was one of two incident reports written for events that occurred the same day "five minutes apart," and the other incident report, "the sexual proposal incident report," was dismissed by the same DHO "based on mental defect." *Id.* at 3-4. Bell asserts the discovery she has requested "will show that the incident report existed and was dismissed due to [her] mental state on 3/21/20, at 2:30." *Id.* at 4-5.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." and must show "good cause." <u>Bracy v. Gramley</u>, 520 U.S. 899, 904 (1997). Discovery may be permitted "for good cause." Rule 6(a), R. Gov. § 2254 Cases (applicable to § 2241 proceedings and permitting discovery "for good cause"). "A party

requesting discovery must provide reasons for the request."   *Id.* Rule 6(b).

"Good cause" for discovery under Rule 6 exists "where specific allegations

before the court show reason to believe that the petitioner may, if the facts

are fully developed, be able to demonstrate that he is . . . entitled to relief."

Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300

(1969)).   "[G]ood cause for discovery cannot arise from mere speculation."

Arthur v. Allen, 459 F.3d 1310, 1311 (11th Cir. 2006).

Given that Bell has focused her request on the second incident report

she alleges she received for conduct that occurred March 21, 2018, the Court

will confine its analysis to that request.   As explained in the analysis of

Ground Five, *supra*, nothing in the documentation provided by Respondent

reflects the existence of such second report.   *See* ECF Nos. 12-1 – 12-17.

Even assuming the existence of such report, however, that would not change

the result here.   As explained above, Bell received all required due process

protections and she admitted to the charge at issue in the challenged

disciplinary proceeding involving Incident Report 3102789.   ECF No. 12-3.

Moreover, even if BOP policy was not followed, such does not rise to the

level of a constitutional violation.   *See* Reeb, 636 F.3d at 1227; Sepulveda,

645 F. App'x at 118 n.2; Nelson, No. ED CV 15-2488-CAS (PLA), 2016 WL

3563290, at *3; *accord, e.g.*, Le, No. 5:12cv377-LAC/EMT, 2013 WL

2250142, at *7.

Based on the foregoing, the Court denies Bell's discovery requests. *See, e.g.*, United States v. Wilson, 901 F.2d 378, 382 (4th Cir. 1990) (affirming denial of discovery request because "[i]t was reasonable for [the judge] to conclude that the requested discovery, if granted, would add little or nothing to the proceedings"); United States v. Purcell, 667 F. Supp. 2d 498, 518 (E.D. Pa. 2009) ("In the habeas context, courts have denied discovery requests on the ground that the defendant failed to make a showing that the materials requested would contain relevant evidence."), *aff'd*, 517 Fed. App'x 79 (3d Cir. 2013).

### Request for Copies of Motion and Docket Sheet

Finally, Bell has submitted a letter to the Court requesting "a file copy of the attached motion & attachment and an updated docket sheet." ECF No. 30. It is not clear, however, what Bell means by "the attached motion & attachment." *Id.* To the extent she requests a print-out of the court docket for this case, the Court grants such request and directs the Clerk of Court to send a print-out of the docket for this case to Bell.

Accordingly, it is **ORDERED**:

1. Petitioner's motion to seal the documents and exhibits in this case

   (ECF No. 18) is **GRANTED in part and DENIED in part**. In

particular, the Court directs the Clerk to seal exhibits ECF Nos. 12-6 and 12-8, and unseal all remaining exhibits and documents filed in this case.

2. Petitioner's discovery motions (ECF Nos. 19, 20, 21) are **DENIED**.

3. Petitioner's request for copies (ECF No. 30) is **GRANTED in part and DENIED in part**.   The Clerk of Court is directed to send a print-out of the docket to Petitioner.

## Conclusion

It is therefore respectfully **RECOMMENDED** that the amended petition for writ of habeas corpus filed under 28 U.S.C. § 2241 (ECF No. 9) be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

Therefore, it is respectfully **RECOMMENDED** that Petitioner's amended § 2241 petition, ECF No. 9, be **DENIED**. It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 9, 2020.

**S/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).    A copy of the objections shall be served upon all other parties.    A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.    Fed. R. Civ. P. 72(b)(2).    Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.    If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.    See 11th Cir. R. 3-1; 28 U.S.C. § 636.