## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**TONYA BELL,**

      **Petitioner,**

**v.**                           **Case No. 4:19cv442-WS/MAF**

**WARDEN, FCI TALLAHASSEE,**

      **Respondent.**

_____/

## AMENDED
## REPORT AND RECOMMENDATION[1]

Petitioner Tonya Bell, a federal inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging nine prison disciplinary actions resulting in the loss of good conduct time. ECF No. 1. She subsequently filed an amended § 2241 petition (ECF No. 9), and after service, Respondent filed an answer, with exhibits. ECF No. 12. The court granted Petitioner's motion for leave to supplement the first ground of her amended petition, ECF No. 13, and Respondent filed an answer thereto. ECF Nos. 13-15. Petitioner also filed a reply. ECF No. 26. The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

---

[1] This recommendation supersedes ECF No. 32.

Northern District of Florida Local Rule 72.2(B).

On June 9, 2020, the undersigned entered a Recommendation that Petitioner's § 2241 petition be denied.   ECF No. 32.   The district court adopted the Recommendation in full on July 6, 2020.   ECF No. 34. Petitioner appealed, and the Eleventh Circuit vacated the district court's order and remanded "for the reasons outlined in Appellee's motion [for vacatur and remand]."   ECF No. 60 at 2.   Respondent had requested a remand pursuant to *Clisby v. Jones*, 960 F. 2d 925, 938-38 (11th Cir. 1992) because this court had not addressed Petitioner's supplemental Ground One claim that non-vested GCT cannot be forfeited from an inmate serving a DC-SRAA sentence (ECF No. 13 at 8).   ECCA Case 20-13539, March 25, 2021.

The case was re-referred to the undersigned on April 7, 2022, and Respondent has now filed a supplemental response, as directed.   *See* ECF No. 72, 74.   For the convenience of the district court and in the event of a subsequent appeal, this amended recommendation includes discussion of not only Petitioner's supplemental Ground One which was the subject of the remand, but all of Petitioner's claims.[2]   After careful consideration of the entire record, the undersigned concludes Petitioner is not entitled to federal

---

[2] Because the Order portion of the Court's original Order and Report and Recommendation remains unchanged and the Order was docketed as a separate docket entry (*see* ECF No. 31), the undersigned has not revisited the issues raised in the Order.

habeas relief and, accordingly, her amended § 2241 petition should be denied.

## Background and Procedural History

Petitioner Tonya Bell, an inmate at the Federal Correctional Institution (FCI) in Tallahassee, Florida, is serving a sentence of 300 months, to be followed by five (5) years of supervised release, imposed January 8, 2008, by the Superior Court of the District of Columbia in case number 2007 CF3 12804, following her entry of a guilty plea to fifteen (15) counts.   ECF No. 12-17.   Her current release date is December 18, 2029.   *See* www.bop.gov/inmateloc.

Bell filed this § 2241 petition challenging nine prison disciplinary actions that resulted in the loss of Good Conduct Time (GCT) credits.   ECF No. 9 (amended petition); *see* ECF No. 1.   In her amended petition, she presents six grounds:   (1) incident reports 3240650, 3190389, and 3102789 should be expunged because of incorrect information relied on by the discipline hearing officer (DHO); (2) incident reports 2954936, 2955644, and 2963400 "should be dismissed for … staff (psychologist) not receiving a mental health evaluation (MHE) within 24 hours"; (3) incident report 3082243 should be dismissed as procedural error occurred when Bell was referred for a mental health evaluation (MHE); (4) incident report 3063410 should be

expunged as procedural error occurred because Bell did not receive a MHE within 24 hours of the report; (5) incident report 3102789 should be dismissed as "[t]wo incident reports were written five minutes apart"; (6) and incident report 3090183 should be dismissed because of insufficient evidence.   ECF No. 9 at 3-5.

In his answer, Respondent concedes Bell has exhausted her administrative remedies, but asserts the disciplinary sanctions at issue were imposed pursuant to authorized Bureau of Prisons (BOP) regulations and policies, and Bell received due process throughout the disciplinary process. ECF No. 12 at 3-4.   Respondent details each incident report, *id*. at 5-15, and argues the facts show Bell received advance written notice of the charges, an opportunity to call witnesses and present evidence, a written statement made by the factfinder outlining the evidence relied on and the reasons for the disciplinary action, and the discipline was supported by at least some evidence, *id*. at 15.   Respondent further argues Bell's arguments in each ground lack merit.   *Id*. at 15-23; ECF No. 15 at 1-2.

In her reply, Bell requests her petition be granted.   ECF No. 26 at 1. She asserts that she "is not guilty, just because she says she is guilty, due to her lack of knowledge and her mental state."   *Id*. at 2.

As noted above, the court's original Report and Recommendation that the petition be denied was issued on June 9, 2020.   ECF No. 32.   The Order adopting the Recommendation over Petitioner's objection was subsequently vacated.   *See* ECF No. 33, 34, 60.   Therefore, although the remand was merely to address a *Clisby* issue, because the district court will be required to consider the case de novo, the Court has reviewed the substantive content and updated its prior recommendation, as appropriate.

## Analysis

The Judiciary Act of 1789 granted federal courts the power to issue the writ of habeas corpus.   *See* United States v. Hayman, 342 U.S. 205 (1952). The habeas remedy is now codified in 28 U.S.C. § 2241, subsection (c)(3) of which provides that the writ of habeas corpus shall not extend to a prisoner unless the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."   As noted in Hayman, prisoners must bring habeas corpus applications in the district of confinement.   342 U.S. at 213. Because courts with federal prisons in their jurisdictional boundaries became inundated with habeas petitions, and because the materials, witnesses, and other evidence which had a significant bearing on the determination of the legality of a sentence were generally located in the district where sentence was imposed rather than where the prisoner was confined, in 1948 Congress

enacted § 2255 of Title 28.   *See id*. at 212-14, 218; *see also* <u>Wofford v.
Scott</u>, 177 F.3d 1236, 1239 (11th Cir. 1999).

The language of § 2255 suggests, and the Eleventh Circuit has
expressly concluded, that this statute governs challenges to the legality of
the imposition of a sentence, while leaving § 2241 available to challenge the
continuation or execution of an initially valid confinement.   *See* <u>Antonelli v.
Warden, U.S.P. Atlanta</u>, 542 F.3d 1348, 1351–52 (11th Cir. 2008); <u>United
States v. Jordan</u>, 915 F.2d 622, 629 (11th Cir. 1990) (explaining § 2255 is
primary method of collateral attack on federally imposed sentence).   Thus,
§ 2241 provides an avenue for challenges to matters such as the
administration of sentences or parole, prison disciplinary actions, prison
transfers, and certain types of detention.   *See* <u>Antonelli</u>, 542 F.3d at 1352
(petition challenging decision of Federal Parole Commission is properly
brought pursuant to § 2241); <u>Thomas v. Crosby</u>, 371 F.3d 782, 810 (11th Cir.
2004) (petition challenging pre-trial detention is properly brought pursuant to
§ 2241); <u>Bishop v. Reno</u>, 210 F.3d 1295, 1304 n.14 (11th Cir. 2000) (petition
challenging BOP's administration of service credits, including calculation,
awarding, and withholding, involves execution rather than imposition of
sentence, and thus is matter for habeas corpus).

In this case, Bell's § 2241 petition raises challenges to nine (9) BOP

incident reports that resulted in determinations that she committed the prohibited acts as charged, specifically five incidents of assault, two incidents of fighting, one incident of threatening another with bodily harm, and one incident of insolence towards staff.   ECF No. 9 at 3-5; ECF Nos. 12-1, 12-2, 12-3, 12-7, 12-9, 12-10, 12-11, 12-13, and 12-16.   The imposed sanctions included the loss of GCT credits.   *See* ECF Nos. 12-1 at 3, 12-2 at 2, 12-3 at 2, 12-7 at 2, 12-9 at 2, 12-10 at 2, 12-11 at 2, 12-13 at 2, and 12-16 at 2. Both Bell and Respondent indicate Bell has exhausted her administrative remedies.   ECF No. 9 at 3-6; ECF No. 12 at 3.

To state a cognizable claim for the denial of due process in connection with prison discipline, a prisoner must show a protected liberty interest of which he was deprived without minimum procedural protections. Dean-Mitchell v. Reese, 837 F.3d 1107, 1112 (11th Cir. 2016) (citing Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974)). A federal inmate has a liberty interest in earned GCT credits and, accordingly, must receive due process before those credits are revoked as a result of prison discipline.   *See* Wolff, 418 U.S. at 557-58.   The Eleventh Circuit has explained:

> In Wolff, the Supreme Court held that minimum due process protections in the context of a prison disciplinary hearing include the following:   (1) advance written notice of the charges against the inmate (in this case, the Incident Report); (2) an opportunity for the inmate to call witnesses and present documentary

> evidence, so long as doing so is consistent with institutional
> safety and correctional goals; and (3) a written statement by the
> factfinder outlining the evidence relied on and the reasons for the
> disciplinary action (here, the DHO report). *Id*. at 563-67 . . . ;
> O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011).

Dean-Mitchell, 837 F.3d at 1112.   As reflected in the attachments to

Respondent's answer, Bell received the required procedural due process

protections.   *See* ECF Nos. 12-1 – 12-16.   In particular, the incident reports

and DHO findings indicate Bell was advised of her rights and understood

those rights, including receiving a written copy of the incident report/charges,

the right to have a staff representative, the right to call witnesses and present

documentary evidence, the right to present a statement or remain silent, the

written copy of the DHO's findings and evidence relied on to support the

DHO's decision, and the right to appeal the DHO's decision pursuant to the

Administrative Remedy Procedure within 20 calendar days.   ECF Nos. 12-

1, 12-2, 12-3, 12-7, 12-9, 12-10, 12-11, 12-13, and 12-16.

The inquiry does not end here.   The U.S. Supreme Court has held that

"revocation of good time does not comport with the 'minimum requirements

of procedural due process' unless the findings of the prison disciplinary board

are supported by some evidence in the record."   Superintendent, Mass.

Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455-56 (1985).   The Court

explained:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id*. at 455-456; *see, e.g.*, <u>Young v. Jones</u>, 37 F.3d 1457, 1460 (11th Cir. 1994) (explaining that federal courts should not be "judging and reweighing the evidence presented in a prison disciplinary hearing"; rather, the "role of this court is to determine whether an inmate receives the procedural protections provided by <u>Wolff</u> and whether 'some evidence' exists which supports the hearing officer's determination"); <u>Tedesco v. Sec'y, Dep't of Corr.,</u> 190 Fed. App'x 752, 758 (11th Cir. 2006) (upholding prison disciplinary decision because "some evidence" supported the prison's decision and inmate's due process rights as set forth in <u>Wolff</u> were not otherwise violated). The Supreme Court noted that "[r]equiring a *modicum* of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." <u>Hill</u>, 472 U.S. at 455 (emphasis added). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* at 456. Thus, the threshold amount of evidence required

for this Court to uphold a prison disciplinary decision is quite low.

Accordingly, each incident report, and the associated ground(s) for relief at issue, is addressed below.

### <u>Ground 1</u>:    Incident Reports 3240650, 3190389, and 3102789

In Ground 1, Bell asserts three incident reports (IR)– 3240650, 3190389, and 3102789 – should be expunged and her good conduct time (GCT) restored.    She contends the Disciplinary Hearing Officer (DHO) improperly forfeited her GCT on a PLRA sentence that expired in 2003, when her current sentence is under the Sentencing Reform Act (SRA).    ECF No. 9 at 3.    Respondent counters that the GCT Bell lost was taken from her D.C. Sentencing Reform Amendment Act (DC-SRAA) sentence, as reflected in BOP sentence computation #020.    ECF No. 12 at 16; ECF No. 15 at 2; *see* ECF Nos. 12-4, 12-5, 12-17.

Petitioner contends in her supplement to Ground One, without citation, that the forfeiture of non-vested good conduct time (NVGCT) Sanction under Sanction B, inmate Discipline Program, does not apply to DC SRAA/SRA inmates.    ECF No. 13 at 8.    The Regional Administrative Appeal attached to her supplement also reflects Bell's argument that she was not a PLRA inmate, but rather an SRA inmate, and thus the sanctions imposed should not apply to her.    ECF No. 13 at 9.    The response to her Regional appeal

stated in relevant part:

> After a review of the record, it has been determined you have two separate sentence computations.   While the first is as an SRA commitment, the second computation is for a PLRA commitment, as you release via Good Conduct Time.

ECF No. 13 at 9.

In response to Petitioner's supplement, Respondent again states that the GCT Bell lost was taken from the DC-SRAA sentence.   Respondent notes at the time of its submission Petitioner had earned 194 days of good conduct time and was projected to earn a total of 780 days of good conduct time in service of the DC-SRAA sentence.   ECF No. 15 at 2.   It concludes that because Bell's sentence was not expired, she was not entitled to relief. *Id.*

As previously noted, after the district court denied Bell's amended petition, she appealed to the Eleventh Circuit.   While the appeal was pending, the respondent moved for vacatur and remand for this Court to address Bell's contention in her supplement to Ground One that non-vested good conduct time (NVGCT) could not be forfeited from an inmate serving a DC-SRAA sentence.   *See* ECF No. 13 at 8, 9; ECF No. 33 at 4. Respondent has now filed a supplemental response as to this issue.   ECF No. 74.

Case No. 4:19cv442-WS/MAF

The supplemental response and attachments discredits Petitioner's assertion that the sanction of forfeiture of GCT does not apply to inmates such as Bell serving DC-SRAA sentences.    The BOP is statutorily authorized to discipline persons charged with or convicted of offenses against the United States.   18 U.S.C. § 4042(a)(3).   Title 28 C.F.R. § 541 and BOP Program Statement 5270.09, which govern the Inmate Discipline Program ("IDP"), apply to "sentenced and unsentenced inmates in Bureau custody."   28 C.F.R. § 541.2; ECF No. 74-3 at 2, P.S. 5270.09 at 2.   This section specifically identifies D.C. Code felony offenders as one of the classes of persons to which the IDP applies.   ECF No. 74-3 at 2, P.S. 5270.09 at 2.   Loss of good conduct time sentence credits is a mandatory disciplinary sanction for inmates who are DC Code offenders.   28 U.S.C. § 541.4(a)(2).   Petitioner's disciplinary sanctions were imposed pursuant to these regulations and policies.

Furthermore, Program Statement 5270.09(B.1) provides that for crimes committed on or after April 26, 1996 (PLRA and SRAA), GCT credit towards an inmate's service of sentence does not vest until the date the inmate is released.   ECF No. 74-3 at 14.   It further states: "[p]rior to this award being made, the credit may be disallowed for an inmate found to have committed a prohibited act."   *Id.*   Therefore, because Petitioner was

sentenced on January 8, 2008 for offenses committed on June 2, 2007, her GCT will not vest until the date of her release, and it may be withdrawn at any point up until that date if Petitioner is found to have committed a prohibited act.   ECF No. 74-1 at 1, ECF No. 74-2 at 1.   The fact that Petitioner's sentence was imposed in the District of Columbia under the Sentencing Reform Act does not alter this conclusion.   Therefore, this ground for relief, as supplemented, should be denied.

### <u>Ground 2</u>:   **Incident Reports 2954936, 2955644, and 2963400**

In Ground 2, Bell asserts three incident reports – 2954936, 2955644, and 2963400 – should be dismissed because she, as a mental health care level 3 inmate, did not receive a mental health evaluation (MHE) within 24 hours of being placed in the special housing unit (SHU).   ECF No. 9 at 3. Respondent asserts this claim lacks merit.   ECF No. 12 at 17.

As Respondent indicates, the BOP recognizes, in Program Statement 5310.16, titled "Treatment and Care of Inmates with Mental Illness," that "[a]n inmate's mental health symptoms may contribute to institution rule infractions that could result in disciplinary sanctions, including SHU placement or the extension of SHU placement."   BOP Program Statement 5310.16, at 21.   Accordingly, the Program Statement provides that "[i]n these cases it is the responsibility of the Mental Health Treatment

Coordinator to provide consultation to the DHO to ensure the disciplinary process is applied appropriately to inmates with mental illness." *Id*. Any incident report received by a CARE3-MH inmate, as Bell was for the incidents at issue, is referred by the DHO to a psychologist for determination of competence and responsibility. *Id*. at 22. The Program Statement further provides:

> The Mental Health Treatment Coordinator indicates whether the inmate is competent or responsible and whether some types of sanctions are inappropriate based on his/her mental health needs. Sanctions that limit social support (e.g., SHU placement, loss of visits, or loss of phone calls) should be considered on a case-by-case basis and may not be appropriate for inmates with mental illness who use these supports as a component of their treatment or recovery.

*Id*. Contrary to Bell's allegation, nothing in the Program Statement indicates such evaluation of competence and responsibility must be completed within 24 hours of an inmate's SHU placement. *See id*.; ECF No. 12 at 17.

The incidents at issue occurred February 4, 2017, February 25, 2017 and March 17, 2017, and all involved assault. *See* ECF Nos. 12-7, 12-9, 12-10. As Respondent indicates, during the disciplinary process for these incident reports, staff identified Bell as a CARE3-MH inmate and a staff psychologist conducted an MHE regarding these incident reports on March 28, 2017, in accordance with Program Statement 5310.16. *See* ECF No.

12-8.   The resulting BOP Psychological Services Institution Disciplinary Process Report indicates that Bell's diagnostic history did not appear to affect her responsibility for the incidents or her competency to undergo the disciplinary process.   ECF No. 12-8 at 2.   The report also indicated evidence suggested Bell had a clear understanding of right from wrong and of the DHO process.   *Id*.   Accordingly, the evaluator indicated that sanctions would be left to the DHO's discretion.   *Id*.

Thereafter, Bell continued through the disciplinary process and, in each case, the DHO determined she committed the assault as charged. ECF Nos. 12-7 at 2, 12-9 at 2, 12-10 at 2.   Thus, as Respondent asserts, the BOP's Program Statement was followed and Bell's argument lacks merit. This ground should be denied.

## <u>Ground 3</u>:   Incident Report 3082243

In Ground 3, Bell asserts incident report 3082243 should be dismissed because the "detailed written facts dated 1/25/18" indicates she had psychotic and abnormal mental health symptoms, but she was not referred to psychology for an MHE.   ECF No. 9 at 4.   Respondent indicates this claim lacks merit.   ECF No. 12 at 19.

Incident Report 3082243 charges Bell with "[t]hreatening another with bodily harm" in violation of Prohibited Act Code 203.   ECF No. 12-11 at 3.

The report reflects the incident took place on January 25, 2018, at 9:45 p.m.

The Description of the Incident was as follows:

> At the above date and time, I stepped over to Unit 2 South due
> to there being a disruption on the unit.   Upon getting to the unit,
> I observed Inmate Bell (02260-001) throwing things in the trash,
> cursing as well as muttering incoherently.   Once compound
> arrived on the unit they instructed Inmate Bell to put her items
> down and to come with them, as inmate Bell stepped out of her
> room she made eye contact with me and proceeded to pick up
> and [sic] mop stick that was on the floor, holding it in a
> threatening matter.   Inmate Bell took a step in my direction and
> twirled the mop stick, at that moment Officer Garcia stepped in
> front of Inmate Bell and removed the mop stick from her hand.

*Id*. at 3.   The reporting employee, R. Wofford, prepared the report on

January 25, 2018, at 10:30 p.m., which evidently corresponds to Bell's

reference to "detailed written facts dated 1/25/18."   *Id*.   The section titled

"Comments of Inmate to Committee Regarding Above Incident" contains the

handwritten sentence, "I didn't mean too [sic]."   *Id*.

The DHO Report quoted Bell's statement, "I'M GUILTY, THE REPORT

IS TRUE."   ECF No. 12-11 at 1.   The DHO found Bell committed the

prohibited act of threatening another with bodily harm, contrary to Code 203,

based on Bell's statement and the written incident report.   *Id*. at 2.

Respondent explains that on the incident date, January 25, 2018, and

on the hearing date, March 1, 2018, Bell was a Mental Health Care Level 2.

ECF No. 12 at 19.   Respondent further explains that, pursuant to Program

Statement 5310.16, at 22, no MHE was required absent an appearance of mental health concerns.   ECF No. 12 at 19; *see* BOP Program Statement 5310.16, at 22.   Indeed, that Program Statement provides:

> The DHO refers the following incident reports to a psychologist for determination of competence and responsibility:
>
> ▪  Any incident report received by a CARE3-MH or CARE4-MH inmate.
>
> ▪  Any incident report received by a CARE2-MH inmate where there appears to be a mental health concern.
>
> ▪  Any incident reports for Code 228 involving self-harm.
>
> ▪  Any incident report for Code 302, Misuse of Authorized Medication.

*Id*.   Thus, as Bell was a CARE2-MH inmate in early 2018, the DHO would only refer the incident report to a psychologist for a determination of competence and responsibility if there appeared to be a mental health concern.   Nothing in the "facts" section referenced by Bell, quoted above, and nothing in the remainder of the report, indicates such concern.

Moreover, Respondent points out that, even assuming staff should have performed an MHE pursuant to Program Statement 5310.16, a violation of policy alone does not constitute a constitutional violation.   ECF No. 12 at 19.   Indeed, "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because

noncompliance with a BOP program statement is not a violation of federal law," rather "[p]rogram statements are 'internal agency guidelines [that] may be altered by the [BOP] at will' and that are not 'subject to the rigors of the Administrative Procedure Act, including public notice and comment.'"  Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) (affirming denial of § 2241 petition challenging BOP decision to expel Reeb from residential drug abuse program; quoting Jacks v. Crabtree, 114 F.3d 983, 985 n.1 (9th Cir. 1997)); Sepulveda v. Warden, Canaan USP, 645 F. App'x 115, 118 n.2 (3d Cir. 2016) (affirming denial of § 2241 petition challenging prison discipline and noting, with citation to Reeb:  "A habeas claim under § 2241 cannot be sustained based solely on the BOP's alleged violation of its own Program Statements inasmuch as Program Statements are not mandated by statute or the Constitution, and there has been no showing of prejudice."); Nelson v. Ives, No. ED CV 15-2488-CAS (PLA), 2016 WL 3563290, at *3 (C.D. Cal. May, 23, 2016) (Report and Recommendation to deny § 2241 petition challenging prison discipline and explaining:  "[W]hile petitioner's first hearing may have been deficient under BOP policy because of the absence in the record of a mental health assessment, this error was corrected for the second hearing.  Petitioner has not demonstrated that he has suffered any prejudice.  In any event, a violation of BOP policy as set out in a program

statement does not rise to the level of a due process violation, as 'noncompliance with a BOP program statement is not a violation of federal law.'" (quoting Reeb, 636 F.3d at 1227)); *accord, e.g.*, Le v. Augustine, No. 5:12cv377-LAC/EMT, 2013 WL 2250142, at *7 (N.D. Fla. May 22, 2013) (Order adopting Report and Recommendation to deny § 2241 petition challenging prison discipline, which explained, in pertinent part: "[T]o the extent Petitioner argues that the alleged violations of BOP Program Statements and federal regulations by the investigating officer, hearing officer, and officials reviewing his administrative appeals provide a basis for habeas relief independent of his due process claims, his claim is without merit.   A claim that the BOP violated its own Program Statements, when the Program Statements were not mandated by statute or the constitution, does not constitute a violation of federal law; therefore, it cannot be sustained in a habeas petition.   Program Statements are BOP policies, guidelines or interpretive rules, not substantive law." (citing Reeb, 636 F.3d at 1227)).

As explained above, Bell received all required due process protections during the disciplinary proceedings and evidence in the record supports the DHO's determination.   Accordingly, this ground should be denied.

## **Ground 4**:   **Incident Report 3063410**

In Ground 4, Bell asserts incident report 3063410 should be expunged

because she, as a CARE2-MH or CARE3-MH inmate did not receive an MHE to determine competence or responsibility within 24 hours of her arrival to the SHU.   ECF No. 9 at 4.   Respondent asserts Bell is not entitled to relief on this ground because on the date of her disciplinary hearing she was a mental health care level 2 inmate, for whom no MHE was required absent an appearance of mental health concerns.   ECF No. 12 at 20-21.

Staff did not become aware of the December 4, 2017 incident until December 19, 2017.   ECF No. 12-13 at 3.   The Incident Report described the incident as follows:

> An investigation concluded regarding the alleged assault on inmate [ ] by inmate Tonya Bell, Reg. No. 02260-007.   It was determined Bell did not assault [ ]; rather, inmates Bell and [ ] were involved in a fight.   This determination was based on Bell and [ ] statements, inmate witness statements, and photographs of the area where the incident occurred.   Specifically, on December 4, 2017, at approximately 4:26 PM, staff identified Inmates Tonya Bell and [ ] as being involved in an altercation on Unit M-2.   Inmate Bell was observed, by the unit Officer, on the floor striking with a closed fist inmate [] in the face and head area. Both inmates, Bell and [ ], admitted to arguing before the incident occurred, however, [ ] denied striking Bell.   Inmate Witnesses stated they witnessed [ ] strike Bell first by punching her in the head.   Bell responded by punching [ ] repeatedly in the face until staff arrived and separated them.   Pictures of the common area where the incident occurred documented trash from the trash can scattered everywhere on the floor.   It is evident a struggle occurred between Bell and [ ].

*Id.*   The Incident Report was prepared on December 19, 2017, at 2:46 p.m.

and delivered at 3:50 p.m. on the same date.   The report indicates Bell had no comment or statement.   *Id*. at 3-4.

As Respondent explains, on the date of this incident, Bell was a CARE3-MH inmate.   *See* ECF Nos. 12-6, 12-13.   Notably, however, in a BOP Psychology Services Diagnostic and Care Level Formulation conducted on December 15, 2017, a staff psychologist concluded that, based on Bell's symptoms and functioning over a sustained period of time, she should be a CARE2-MH assignment.   ECF No. 12-6 at 3.   Accordingly, Bell's mental health care level assignment was reduced from CARE3-MH to CARE2-MH.   *Id*.

Thus, by the time of Bell's disciplinary hearing on January 9, 2018, she was a CARE2-MH inmate.   *See* ECF Nos. 12-12, 12-13.   As explained in the analysis of Ground 3, *supra*, pursuant to Program Statement 5310.16, no MHE was required absent an appearance of mental health concerns. ECF No. 12 at 21; *see* BOP Program Statement 5310.16 at 22.   Nothing in the incident report or in the BOP Psychology Services Diagnostic and Care Level Formulation conducted on December 15, 2017, indicates mental health concerns relevant to Bell's competence or responsibility.   See ECF Nos. 12-6, 12-13 at 3-4.

Further, as Respondent again points out, even assuming staff should

have performed an MHE pursuant to Program Statement 5310.16, a violation of policy alone does not constitute a constitutional violation.   ECF No. 12 at 21.   "A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." Reeb, 636 F.3d at 1227; *see* Sepulveda, 645 F. App'x at 118 n.2; Nelson, No. ED CV 15-2488-CAS (PLA), 2016 WL 3563290, at *3; *accord, e.g.*, Le, No. 5:12cv377-LAC/EMT, 2013 WL 2250142, at *7; Jean v. Johns, No. 5:20cv60, 2021 WL 1097593, at *6 (S.D. Ga., Feb. 16, 2021).

As explained above, Bell received all required due process protections during the disciplinary proceedings, and evidence in the record supports the DHO's determination.   No relief is warranted.

### Ground 5:   Incident Report 3102789

In Ground 5, Bell asserts incident report 3102789 should be dismissed as "[t]wo incident reports were written five minutes apart" and "DHO verified Ms. Bell mental state caused for dismissal of the sexual proposal infraction via psychology, but refuse to dismiss the assault infractions with the same verifiable evidence..."   ECF No. 9 at 5.   Thus, according to Bell, she received two incident reports within a five-minute period, one charging assault and one charging a "sexual proposal infraction" and she asserts the

DHO dismissed the "sexual proposal infraction" due to her "mental state," but the assault charge was not dismissed.   Bell evidently contends the assault charge should have also been dismissed due to her mental state, which she expands upon in her supplement to this ground for relief.   ECF No. 71.

The assault that is the subject of this incident report occurred March 21, 2018, and the report was both prepared and provided to Bell on that date. ECF No. 12-3.   The report, written by L. Currie, describes the incident as follows:

> On 3/21/18 at approximately 2:30 pm, this writer was speaking with inmate Bell in the hallway between psychology services and the 2nd floor clinic.   This writer called for the assistance of the compound officer as she appeared agitated, was walking away from psychology services, and was not listening to staff directives.   She later became calm, but immediately upon the compound officer arriving on the scene, she struck me with her left open hand on the side of my face, close to my right eye, and began to run off.   Staff immediately gained control of inmate Bell and restrained her.   Operations was notified.

*Id*. at 5.   The DHO report summarizes Bell's statement:   "I'M GUILTY.   I AM DISAPPOINTED AT MYSELF FOR WHAT HAPPENED.   I REALLY DON'T REMEMBER."   ECF No. 12-3 at 1.   The DHO found Bell committed the assault as charged.   *Id*. at 2.   The section for specific evidence relied on includes the following paragraph:

> THE DHO CONSIDERED YOUR ADMISSION.   YOU DID NOT PRESENT, NOR DID THE DHO FIND, ANY EVIDENCE TO

DISPUTE THE REPORTING OFFICER'S WRITTEN ACCOUNT OR YOUR COMMENT AS IT RELATES TO THIS INCIDENT. THE BUREAU OF PRISONS DEFINITION OF ASSAULT IS AN ATTEMPT OR THREAT TO DO VIOLENCE TO ANOTHER, AND INCLUDES BATTERY OR THE UNCONSENTED TOUCHING OF ANOTHER.   THE DHO GIVES THE GREATER WEIGHT OF EVIDENCE TO THE VIDEO SURVEILLANCE, REPORTING STAFF MEMBER AND YOUR STATEMENT. THE DHO FINDS THAT YOU COMMITTED THE PROHIBITED ACT OF ASSAULT, CODE 224, AND SANCTIONED YOU ACCORDINGLY.

*Id*. at 2.

Bell does not provide a number for the second incident report she asserts was issued within five minutes of the first report, for the "sexual proposal infraction," but later dismissed because of her "mental state."   ECF No. 9 at 5.   Nothing in the documentation provided by either party reflects the existence of such second report.   *See* ECF Nos. 12-1 – 12-17.   In her reply, Bell says she does not know the report number because it was dismissed.   ECF No. 26 at 12.   She also indicates "the assault occurred within 15 minutes" – not within five minutes as she asserted in her petition – "of the comment that was dismissed," *Id*. at 13; *cf*. ECF No. 9 at 5, but she later appears to retreat even from this statement, instead focusing on her mental state.   ECF No. 71 at 5-6.

Even if such second report did exist and charged a "sexual proposal infraction," as described by Bell, it may have been dismissed with the DHO

proceeding only on the assault charge, similar to what occurred with incident report 3090183, discussed in the analysis of Ground 6, *infra*.   Regardless, as Respondent indicates, even if BOP policy was not followed, such does not rise to the level of a constitutional violation.   *See* ECF No. 12 at 22.

With regard to the incident report at issue in this ground, Incident Report 3102789, as explained above, Bell received all required due process protections during the disciplinary proceedings, and evidence in the record supports the DHO's determination.   Her claim that an unnamed staff psychiatrist said she had "uncontrolled mental health symptoms" on this date (ECF No. 71 at 6) does not entitle her to relief, and this ground should be denied.

**<u>Ground 6</u>:    Incident Report 3090183**

In Ground 6, Bell asserts incident report 3090183 should be dismissed because her comment of "I love you" to the reporting officer was not sufficient evidence to support the DHO's finding of insolence.   ECF No. 9 at 5. Respondent asserts this claim lacks merit, explaining that Bell received due process and Bell admitted guilt.   ECF No. 12 at 23.

The incident report indicates this incident occurred February 16, 2018. ECF No. 12-16 at 3.   Employee S. McGowan describes the incident, in section 11 of the report as follows:

> On February 16, at approximately 6:08pm, while conducting rounds, Inmate Bell, Tonya made the comment "that she loved me," as I passed her cell.   I immediately told Inmate Bell that she can not make comments like that, she responded "that she could if she wanted to."

*Id*.   In section 17, for Comments of Inmate to Committee Regarding Above

Incident, the report indicates, "I'm guilty."    *Id*.   In section 24, for Inmate

Statement and Attitude, the report provides:

> Inmate Bell, Tonya #02260-007 was properly identified by her 3x5 picture card and advised of her rights, and acknowledged that she understood her rights.   Inmate Bell, Tonya #02260-007 was given a copy of the incident report and the report [w]as read to inmate Bell, Tonya #02260-007.   When asked if the incident report was true as written, she stated, "Yes" Inmate Bell, Tonya #02260-007 was asked if she wanted to make a statement and she stated, "No."

*Id*. at 4.

Similarly, the DHO Report indicates, in the Summary of Inmate

Statement:   "I'M GUILTY, THE REPORT IS TRUE."   ECF No. 12-16 at 1.

The DHO found the act of insolence towards staff was committed in violation

of Code 312, and provided the following specific evidence relied on to

support the findings:

> YOUR DUE PROCESS RIGHTS WERE REVIEWED WITH YOU BY THE DHO AT THE TIME OF THE HEARING.   YOU STATED YOU UNDERSTOOD YOUR RIGHTS AND HAD NO DOCUMENTARY EVIDENCE TO PRESENT.   YOU DID NOT REQUEST ANY WITNESSES NOR DID YOU REQUEST THE SERVICES OF A STAFF REPRESENTATIVE TO ASSIST YOU

AT THE HEARING.  YOU INDICATED TO THE DHO THAT
YOU[] UNDERSTOOD AND YOU WERE READY TO
PROCEED WITH THE HEARING.

THE DHO FOUND YOU COMMITTED THE PROHIBITED ACT
OF CODE 312, INSOLENCE TOWARDS STAFF.  THE
CHARGE 206, MAKING A SEXUAL PROPOSAL WAS
DISMISSED AS INSOLENCE WAS MORE APPROPRIATE.

THE DHO BASES THIS DECISION ON THE FACTS
PRESENTED IN THE BODY OF THE WRITTEN REPORT AS
FOLLOWS:  ON FEBRUARY 16, 2018, AT APPROXIMATELY
6:08PM, WHILE CONDUCTING ROUNDS, INMATE BELL,
TONYA MADE, 02260-007, THE COMMENT "THAT SHE
LOVED ME", AS I PASSED HER CELL.  I IMMEDIATELY
TOLD INMATE BELL THAT SHE CANNOT MAKE COMMENTS
LIKE THAT, SHE RESPONDED, "THAT SHE COULD IF SHE
WANTED TO."

YOU ADMITTED TO THE CHARGES AT THE DHO HEARING
AND STATED, "I'M GUILTY, THE REPORT IS TRUE."

IN REGARD TO THIS INCIDENT, THE DHO CONSIDERED
YOUR ADMITTANCE TO THE CHARGE AND SECTION 11 OF
THE INCIDENT REPORT.  THE REPORTING STAFF
MEMBER WAS CLEAR AS THEY DETAILED YOUR
COMMENT IN SECTION 11 OF THE INCIDENT REPORT.
THE DHO FOUND THE REPORTING STAFF MEMBER
STATEMENT AND YOUR ADMISSION VALID AND
WARRANTED AN INCIDENT REPORT FOR INSOLENCE.
ALTHOUGH THE DHO DOES NOT SUPPORT CODE 206 AS
WRITTEN, THE DHO FINDS THAT YOU COMMITTED THE
PROHIBITED ACT OF CODE 312, INSOLENCE TOWARDS
STAFF AND SANCTIONED YOU ACCORDINGLY.

*Id*. at 2.

The description of the incident as well as Bell's admission support the

DHO's determination.   *See* ECF No 12-16 at 3.   Bell asserts saying "I love you" does not constitute sufficient evidence of insolence.   The record reflects a bit more than that occurred, however.   Specifically, after Bell made that statement to the prison employee, the employee told Bell she could not make such statements and Bell then responded that "she could if she wanted to."   ECF No. 12-16 at 2, 3.   Thus, "some evidence" in the record supports the DHO's conclusions.   *See, e.g.*, Smith v. Roal, 494 F. App'x 663, 664-65 (7th Cir. 2012) (affirming dismissal of § 2241 petition challenging discipline for assaulting guard and explaining: "Smith's own statements supply some evidence that he disobeyed and assaulted the guard [as] [h]e admits that he spun around and 'removed' the hand gripping his shoulder – a hand belonging to the guard who had just told Smith he was about to be handcuffed."); Jones v. Ortiz, Civ. Action No. 17-2639 (JBS), 2019 WL 397976, at *5 (D. N.J. Jan. 31, 2019) (district court opinion affirming imposition of discipline for insolence and explaining as to that charge: "The Court easily finds that there is at least 'some evidence' to support the insolence charge based on the testimony of Officer Sheets and inmates Lovelady and Colon who testified that Petitioner raised his voice to Officer Sheets and argued with Officer Sheets.").   *See also, e.g.*, Lerma v. Fed. BOP, No. Civ. A. 1:01cv232-C, 2003 WL 22121092, at *2-6 (N.D. Tex. Sept.

12, 2003) (district court order denying § 2241 challenge to prison discipline for insolence toward staff member where inmate raised his voice, became argumentative, and demanded explanation for change in rules, and explaining, among other things, "BOP Prohibited Act Code 312 provides that a federal petitioner may not act with 'insolence towards a staff member,' and the violation of Code 312 is punishable as a moderate category offense;" Code 312 is not unconstitutionally vague or overbroad; the term "insolence" is "readily understood to prohibit disrespectful, abusive, or offensive behavior, and the prohibition against insolence bears a direct relation to the prison administration's need to maintain decorum between inmates and prison officials"); Cardenas v. Adler, No. 1:09cv01793 LJO MJS HC, 2011 WL 2785099, at *5-7 (E.D. Cal. July 13, 2011) (report and recommendation to dismiss § 2241 petition challenging discipline for insolence toward staff member, accepting correctional officer's version of facts, and finding Code 312 valid, explaining "[t]he impact of allowing inmates to act in a disrespectful manner towards correctional officers creates potential safety concerns if prisoners do not view officers as being in positions of authority over the inmate population" and "[a] prisoner has no right to address prison officials in a disrespectful or abusive manner").   This ground should be denied.

## <u>Conclusion</u>

As the Court concluded in its original recommendation, Petitioner has not shown that she is entitled to relief on any of the grounds she raises in her petition. This conclusion has not changed. The Court further concludes Petitioner is not entitled to relief on her supplemental claims. Therefore, the amended petition for writ of habeas corpus, as supplemented, should be denied in its entirety.

## <u>Recommendation</u>

Based on the foregoing, it is respectfully **RECOMMENDED** that Petitioner's amended § 2241 petition, ECF No. 9, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on April 26, 2022.

**S/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

### <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.    Fed. R. Civ. P. 72(b)(2).    A copy of the objections shall be served upon all other parties.    A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2).    <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.    If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.    *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**